ATTACHMENT H-1

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

VERONICA ALAINE FOX,       \*

      \*

     Plaintiff,       \*    CIVIL ACTION FILE

      \*

v.       \*    NO. 1:17-CV-00209-MHC

      \*

GENERAL MOTORS LLC,       \*

      \*

     Defendant.       \*

**PLAINTIFF'S TRIAL BRIEF: PLAYING VIDEO DEPOSITIONS OF
GM WITNESSES EVEN IF THOSE WITNESSES
<u>SHOW UP LIVE AT TRIAL</u>**

GM may protest against Plaintiff 'playing' the video of a videotaped trial deposition taken by Plaintiff for use at trial, arguing that it will bring the witness 'live' to trial. That may seem surprising, given how much trouble this Court and Plaintiff's counsel have gone to with regard to the taking of such trial depositions. But automaker defendants have done that in the past. GM has done that in the past (as far back as 26 years ago, in *Moseley v. GM*). Such a protestation is without merit.

Such a protestation is, of course, an attempt to gouge advantage. Having fought against Plaintiff being able to take trial depositions, and against Plaintiff being able to do so only after GM has been required to produce all evidence that

1

can be used in such trial cross-examinations,[1] after GM hears and sees Plaintiff's

cross examination of those witnesses, GM will endeavor to neuter the entire

exercise by arguing the trial depositions may not be played at trial because GM

will 'voluntarily' bring the witness(es) to the courthouse.  Of course, by then, GM

will have had a chance to fully 'prepare' the witness(es) for the cross-examination.

Under Federal Rule of Civil Procedure 32(a)(4)(D) a "party may use for ***any***

***purpose*** the deposition of a witness, whether or not a party, if the court finds . . .

that ***the party offering the deposition*** could not procure the witness's attendance

by subpoena[.]" (emphasis added)[2].  Veronica Fox, the party offering the

deposition, could not, and cannot, secure the attendance at trial by subpoena GM

witnesses that live outside the state of Georgia.[3]  "[T]he ***extent*** of the Court's

---

[1] It should not be forgotten that it is *undisputed* that in *Fox 1* GM willfully
concealed evidence about the very subject matter of the trial depositions Plaintiff
sought to take (the serial SRX rollover wrecks at GM's own proving grounds) until
after Plaintiff had already taken those depositions.  As a direct result of that
misconduct, Plaintiff must now re-do two, and possibly more, of those trial
depositions.  That's a mess, of course:  Plaintiff's counsel will have to use some of
the admissions made by those GM engineers in the first deposition, and ask further
questions based on the very material evidence concealed until after those first
depositions were taken.

[2] The videotaped depositions satisfy the elements of Rule 32(a)(1) because GM
was present and represented at the depositions and the depositions are to be used to
the same extent that they would be admissible if the witnesses were testifying live.
Fed. R. Civ. P. 32(a)(1)–(2).

[3] Federal Rule of Civil Procedure Rule 45 regulates the Court's subpoena power:

subpoena power is, in fact, grounds for unavailability under Rule 32(a)(4)(D)."

*Saget v. Trump*, No. 18-CV-1599(WFK)(ST), 2019 WL 168559, at *2 (E.D.N.Y.

Jan. 10, 2019).  Plaintiff may therefore play at trial videotaped depositions of any

witness who is not subject to the Court's subpoena power.

GM has always known that Plaintiff intended to play her video depositions

of GM witnesses at trial.  Once GM knows the entire content of Plaintiff's for-trial

cross examinations, it should not have the advantage of forcing Plaintiff to repeat

the cross examinations and of preparing those witnesses based on what it learned

about Plaintiff's trial strategy during those depositions.  Having had time to

consider the effect of the testimony, GM cannot unilaterally grant itself a 'do-

over.'

It must be noted that Plaintiff does not object to GM calling a witness who

was deposed by Plaintiff in a trial video deposition to testify live ***during GM's***

***case-in-chief***.  Plaintiff encourages GM to and hopes that it will do just that.  GM

---

A subpoena may command a person to attend a trial, hearing, or
deposition only as follows: (A) within 100 miles of where the person
resides, is employed, or regularly transacts business in person; or (B)
within the state where the person resides, is employed, or regularly
transacts business in person, if the person: (i) is a party or party's
officer; or (ii) is commanded to attend a trial and would not incur
substantial expense.

Fed. R. Civ. P. 45(c)(1).

has done that in prior cases, e.g. *Moseley v. GM*.  (Plaintiffs played the trial

deposition of GM Chairman Stempel in Plaintiff's case, then GM called him to the

stand during GM's case.)

Respectfully submitted, this 6th day of March, 2019.

Respectfully submitted,

BUTLER WOOTEN & PEAK LLP


BY:   */s/ James E. Butler, Jr.*
JAMES E. BUTLER, JR.
  Georgia Bar No. 099625
  jim@butlerwooten.com
TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@butlerwooten.com
ROBERT H. SNYDER
  Georgia Bar No. 404522
  rob@butlerwooten.com
RORY A. WEEKS
  Georgia Bar No. 113491
  rory@butlerwooten.com
2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700
(404) 321-1713 Fax

4

KENNETH S. NUGENT
WILLIAM G. HAMMILL
 Georgia Bar No. 943334
 whammill@attorneykennugent.com
 4227 Pleasant Hill Road
 Building 11, Suite 300
 Duluth, GA 30096
 404) 885-1983

**ATTORNEYS FOR PLAINTIFF**

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

VERONICA ALAINE FOX,          *
                              *
      Plaintiff,          *      CIVIL ACTION FILE
                              *
v.                            *      NO. 1:17-CV-00209-MHC
                              *
GENERAL MOTORS LLC,           *
                              *
      Defendant.          *

## PLAINTIFF'S TRIAL BRIEF REGARDING MOTIONS IN LIMINE

In a case of this nature, Plaintiff's counsel deem it their pre-eminent task and duty to try to prevent any reversible error. For that reason, Plaintiff files this Trial Brief. Plaintiff's counsel have considerable experience dealing with motions in limine ("MILs"), particularly in automotive products liability cases like this one.

### 1. The Traps

A MIL can be a trap for the trial Judge—and for opposing parties. A party may claim on appeal that the mere filing of a MIL, whether granted or denied, relieved that party of the obligation to object during trial, and then claim "error" although the party gave the Court and opposing counsel no notice of claimed error, stripping both opposing counsel and the Court of any opportunity to redress the thing later claimed to have been "error." *Or* counsel for the MIL movant may

stand up at trial in the presence of the jury and accuse opposing counsel of "violating a Court Order!"  That does happen.[1]

Simple justice requires notice to the Court and opposing party whenever a party thinks something bad has happened. *That is what "objections" are for.  The Court itself,* which has the duty to 'protect the record' and make sure the case is fairly tried, has an absolute right to notice from counsel when counsel claims the rules of evidence or the Court's rulings have been violated.  The opposing party should not first hear about the alleged error from reading some post-trial motion or appellate brief.  It is plainly unjust for a party to first claim post-trial that "reversible error" occurred when the Court and opposing counsel had no idea any such claim might be made.

The trap is real—it exists if the MIL is *either* "granted" *or* "denied." *Whether the MIL is granted or denied*, the movant will take the position that it was not required to object at trial to any then- or later-imagined violation of the MIL,

---

[1] In Plaintiff's counsel's most recent auto products liability trial, the accusations from the automaker's lawyer flew fast and furious – every day.  Accusations such as calling Plaintiff's counsel a "racist" in open court in the presence of jurors.  And accusations that Plaintiff's counsel were violating "court orders" when the automaker's lawyers and corporate representative and expert witnesses had indisputably colluded to deliberately violate the trial court's evidentiary rulings – conduct that caused a mistrial, after 15 days of trial.   It's the 'rule of Cicero' – a defendant with no defense at law or based on the facts will endeavor to abuse its adversary.

thus depriving the trial Judge and the opposing parties of any notice that the movant might claim on appeal that something wrong was done.

In federal court, the general rule is that "[t]he overruling of a motion in limine is not reversible error; only a proper objection at trial can preserve error for appellate review." *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980); *see also Frederick v. Kirby Tankships, Inc*., 205 F.3d 1277 (11th Cir. 2000) (by failing to object at trial, party waived its right to appeal admission of testimony, even though it had filed an unsuccessful, pretrial MIL to limit the testimony); *Judd v. Rodman*, 105 F.3d 1339, 1342 (11th Cir. 1997) (citing *Collins*, 621 F.2d at 784) ("[A]s a general proposition, an overruled motion in limine does not preserve a party's objection for purposes of appeal; a timely objection at trial is required.").

However there is authority behind which a MIL movant can try to hide and then sandbag the trial court and its opponent – by not objecting at trial. *See* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). *But see Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1483 (11th Cir. 1997) ("Absent some good reason for failing to object at trial, however, such a motion does not preserve an error for appeal.")[2];

---

[2] In *Reyes v. Missouri Pac. R.R.*, 589 F.2d 791 (5th Cir. 1979), *vacated on other grounds*, 713 F.2d 116 (5th Cir. 1983), the plaintiff moved in limine to exclude evidence of his four prior convictions for public intoxication in the trial of his

So, there's a possible trap.   The MIL movant's lawyer may consider some
thing said at trial to be a violation of the MIL, while the trial Judge and opposing
counsel would not see the thing the same way at all, *if they were given an
opportunity to consider it* by the MIL movant making an objection.  Yet if the MIL
was *either granted or denied,* the movant may still be able to claim error on appeal.
In fact, even the movant's trial counsel may not 'see' a violation, but since movant
does not have to object, the movant's *appellate counsel* is free *to later claim* there
was a violation even though *no one* at trial thought so.  That happens frequently.
Absent an objection at trial, the appellate court is put in the difficult position of
trying to divine whether the trial Judge and opposing counsel *should have
considered* the thing said to be subject to the MIL.

## 2.  The Remedies.

*First,* if the MIL is at all vague or overbroad, it should be denied as such
*with instructions* that any objection regarding the subject matter of the MIL must
be made at trial, so the Court can then consider same in context.  Some parties
deliberately file vague and overbroad MILs because then the trap is even worse, if

---

personal injury claim against the railroad for injuries sustained when he was run
over by a train while lying on the tracks at night.  *Id.* at 792-93.  Because the judge
denied the motion, the plaintiff was forced to introduce the evidence himself, on
direct, to soften its prejudicial blow to his case.  In that circumstance, because it
would be absurd for a party to object to the introduction of evidence that it offered,
the plaintiff did not waive his objection to the admissibility of the evidence.

the MIL is *either* granted or denied.  A MIL is vague and/or overbroad if it does not clearly and very precisely identify exactly what the movant claims should be excluded.  If such a MIL is denied on that basis with that instruction, the movant is going to have a really hard time claiming error on appeal when it made no objection.   Similarly, if a MIL is compound - that is, covers more than one discrete subject, as most of GM's MILs filed in *Fox I* did—then the MIL should be *denied* —with instructions that the movant must object at trial so the Court can decide the thing in context.

*Second,* the trap can be avoided by a refusal to decide the issue posed by the MIL – the Court can simply *defer* decision on the issue *and instruct* the movant to object at trial.

*Third,* if a MIL fails to very specifically identify the precise thing the movant wants 'out,' and/or if it is at the time MILs are decided difficult to anticipate what the Court's ruling on that thing should be, then whether the ruling is granted, denied, or deferred, the Court should also instruct the movant in its ruling on the MIL that objection must be made at trial.

When a MIL is filed and the Court has not instructed the movant that notwithstanding the filing, the movant must object at trial, that means the Court and opposing counsel literally have to 'keep in mind' throughout trial what the subjects of granted or denied MILs *were*, to avoid a possible appellate trap.  When

a MIL is vague, or overbroad, or compound—and *all* of GM's MILs filed in *Fox I* were one or the other if not all three of those things—keeping all that in mind is quite literally impossible.

It is also true that the answer to whether the thing sought to be excluded may not be knowable pre-trial, when the Court is called upon to decide MILs.  A thing that may seem inadmissible before trial even starts may turn out to be admissible. By electing the order option "deferred and the party opposing any such argument or evidence must object at the appropriate time," the Court gives itself the opportunity to consider the matter in context—based on what is happening during the actual trial.

This Court has the authority—inherently, by statute, and by rule—to control how this case is tried.  Where a lot of MILs are filed, making it difficult or impossible to keep up with them all, the Court has the right to specify that even if a MIL is granted or denied, the proponent of said MIL must nevertheless timely object at trial.  That avoids the trial trap—of a MIL movant protesting in the presence of the jury "he's violating the Court's Order," and the appellate trap—of a MIL movant saying nothing then claiming error on appeal.  Requiring such objection gives the Court an opportunity to determine at trial whether there has been a violation, and if so, to try to remedy the violation.

That is important, because deferral on all, or too many, MILs is counter-productive for the Court.  There are things that clearly should be excluded from trial, lest the trial become a long wearisome free-for-all without evidentiary standards.  MILs can serve a very good purpose, to narrow the issues and evidence that will be heard at trial.

That explicit direction, that the moving party must object at trial, even if the MIL was "granted" or "denied," has to be part of the Record—in an Order or in a transcript.

There is no "downside" or "harm" caused by such a requirement.  Counsel know how to "object" and are accustomed to doing so.  If the moving party is concerned that objecting in the presence of the jury will draw undue attention to the claimed problem, counsel for the moving party may simply ask to "approach the bench," and there make the objection outside the hearing of the jury.

## **CONCLUSION**

If both the proposed remedies are adopted—decision of vague or overbroad or compound MILs are deferred and the Court Orders that counsel must object even if a MIL is granted or denied—both traps are avoided.  When the movant must object at trial, the trial Judge will have context to rule, a record will be made, the trial Judge and opposing party will have an opportunity to address the alleged

misdeed and determine whether the movant's objection is valid and whether

anything should be done to try to cure the claimed error.

Respectfully submitted this 6th day of March, 2019.

Respectfully submitted,


BY:  __/s/ James E. Butler, Jr. _____
JAMES E. BUTLER, JR.
  Georgia Bar No. 099625
  jim@butlerwooten.com
TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@butlerwooten.com
ROBERT H. SNYDER
  Georgia Bar No. 404522
  rob@butlerwooten.com
RORY A. WEEKS
  Georgia Bar No. 113491
  rory@butlerwooten.com
2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700
(404) 321-1713 Fax

KENNETH S. NUGENT
WILLIAM G. HAMMILL
  Georgia Bar No. 943334
  whammill@attorneykennugent.com
4227 Pleasant Hill Road
Building 11, Suite 300
Duluth, GA 30096
(404) 885-1983
**ATTORNEYS FOR PLAINTIFF**

8

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VERONICA ALAINE FOX,                    *
                                        *
          Plaintiff,                    *      CIVIL ACTION FILE
                                        *
v.                                      *      NO. 1:17-CV-00209-MHC
                                        *
GENERAL MOTORS LLC,                     *
                                        *
          Defendant.                    *

PLAINTIFF'S TRIAL BRIEF REGARDING THE
ADMISSIBILITY OF ADMISSIONS IN PLEADINGS, INCLUDING
<u>DISCOVERY RESPONSES</u>

Plaintiff may cross-examine GM employees about GM's own statements in GM's briefing and in its discovery responses because (1) statements made in discovery responses, briefs, or during court proceedings are deemed *admissions in judicio*; (2) any statements made by GM directly or through its counsel constitute an admission of a party opponent under FED. R. EVID. 801(d)(2)(A), (D), and (3) FED. R. CIV. P 33(b)(3) specifically contemplates that interrogatory responses may be used "to the extent allowed by the Federal Rules of Evidence."

1.     **Statements Made in Discovery Responses, Briefs, and at Oral Argument Are *Admissions In Judicio* And Are Conclusive Against GM.**

In the Eleventh Circuit, "the general rule [is] that a party is bound by the admissions in his pleadings." *Best Canvas Prod. & Supplies, Inc. v. Ploof Truck*

1

*Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983).   Such "clear, deliberate, and unequivocal factual assertions—whether made in pleadings, stipulations, responses to discovery, or orally in trial or court proceedings"—constitute binding judicial admissions.  *In re Malia*, No. 09-42273-MGD, 2012 WL 909738, at *2 (Bankr. N.D. Ga. Feb. 8, 2012).

"Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them."  *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) (quoting *Hill v. Federal Trade Comm'n*, 124 F.2d 104, 106 (5th Cir.1941). *See also Rahn v. Olens*, No. 1:14-CV-3660-RWS, 2015 WL 4717448, at *3 (N.D. Ga. Aug. 7, 2015) ("Admissions or allegations appearing in pleadings are treated as admissions *in judicio* and, if not withdrawn, are conclusive of the facts contained therein.").

Accordingly, Plaintiff may use GM's admissions in questioning GM's employees.

## 2.    Statements Made By GM and Its Counsel Are Statements Of A Party Opponent And Are Not Hearsay.

Any statements made by GM or its counsel in its discovery responses or briefing in this or any prior case are also statements of a party opponent because the statements were either (1) made by GM directly, or (2) were made by counsel concerning a matter within the scope of the agency—the relevant representation—

and were made during the existence of the relationship. *See* FED. R. EVID.
801(d)(2)(A), (D) (A statement is excluded from the rule against hearsay if it (A)
"was made by the party in an individual or representative capacity" or (D) "was
made by the party's agent or employee on a matter within the scope of that
relationship and while it existed"). *See also Hanson v. Waller,* 888 F.2d 806, 814
(11th Cir. 1989) (Letter from defense attorney to plaintiff's counsel stating that
defendant truck driver would not have been able to see pedestrian plaintiff if
plaintiff were directly in front of defendant's truck when traffic light changed was
properly admitted as an admission of a party opponent). Thus, beyond being
admissions *in judicio*, statements by GM and its counsel are not hearsay because
they are statements of a party opponent.

**3.     GM's Interrogatory Responses May be Used As Evidence.**

Finally, GM's interrogatory responses may be used as evidence because the
Federal Rules of Civil Procedure specifically contemplate such use. FED. R. CIV.
P. 33(c) ("An answer to an interrogatory may be used to the extent allowed by the
Federal Rules of Evidence); *see also AMCO Ins. Co. v. Inspired Technologies,
Inc.*, 648 F.3d 875, 881 (8th Cir. 2011) ("[I]nterrogatory answers are sworn
statements and 'may be used to the extent allowed by the Federal Rules of
Evidence.' Fed. R. Civ. P. 33(c). . . . Accordingly, the district court did not err in
approving AMCO's reliance—and in relying itself—on 3M's interrogatories as a

source of actual facts outside the complaint to make coverage determinations.'');
*Mangual v. Prudential Lines, Inc.*, 53 F.R.D. 301, 302 (E.D. Pa. 1971) (''answers to interrogatories posited to a corporation are admissible where they are based on the statements of corporate agents given within the scope of their authority''); *Evans v. Local Union 2127, Int'l Bhd. of Elec. Workers, AFL-CIO*, 313 F. Supp. 1354, 1361-62 (N.D. Ga. 1969) (''One purpose of Rule 33 is to allow one party to obtain admissions from another, and thereby save time in preparation and ***at trial***. . . .'') (emphasis added).

Because these statements are admissions *in judicio* or by a party opponent, *see supra*, the interrogatories may be used at trial.  GM's interrogatory responses may be used by Plaintiff in deposition or at trial.

Respectfully submitted this 6th day of March, 2019.

BUTLER WOOTEN & PEAK LLP

/s/  *James E. Butler, Jr.*
JAMES E. BUTLER, JR.
 Georgia Bar No. 099625
 jim@butlerwooten.com
TEDRA L. CANNELLA
 Georgia Bar No. 881085
 tedra@butlerwooten.com
ROBERT H. SNYDER
 Georgia Bar No. 404522
 rob@butlerwooten.com
RORY A. WEEKS
 Georgia Bar No. 113491
 rory@butlerwooten.com

4

2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700
(404) 321-1713 Fax

KENNETH S. NUGENT
WILLIAM G. HAMMILL
  Georgia Bar No. 943334
  whammill@attorneykennugent.com
4227 Pleasant Hill Road
Building 11, Suite 300
Duluth, GA 30096
(404) 885-1983


**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on _____, 2019, I electronically filed with the

Clerk of the Court *****using the CM/ECF system which will automatically send

email notification of such filing to the following attorneys of record:

C. Bradford Marsh, Esq.
Myrece Johnson, Esq.
Swift, Currie, McGhee & Hiers, LLP
1355 Peachtree St., N.E., Suite 300
Atlanta, GA  30309

Reid C. Carpenter
Joel C. Bailey
Benjamin S. Willson
Michael L. Bell
Lightfoot, Franklin & White LLC
400 20th Street North
Birmingham, AL 35203

Thomas M. Klein, Esq.
KLEIN THOMAS
20 East Thomas Road, Suite 2200
Phoenix, AZ 85012

Kevin J. Malloy, Esq.
Bowman and Brooke LLP
1441 Main Street, Suite 1200
Columbia, SC 29201

This ___ day of ___, 2019.

s/ Tedra L. Cannella_____
JAMES E. BUTLER, JR.
  Georgia Bar No. 099625
TEDRA L. CANNELLA
  Georgia Bar No. 881085
ROBERT H. SNYDER
  Georgia Bar No. 404522
RORY A. WEEKS
  Georgia Bar No. 113491
BUTLER WOOTEN & PEAK LLP
2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700
(404) 321-1713 Fax

**ATTORNEYS FOR PLAINTIFF**

6

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| VERONICA ALAINE FOX, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION FILE |
| | * | |
| v. | * | NO. 1:17-CV-00209-MHC |
| | * | |
| GENERAL MOTORS LLC, | * | |
| | * | |
| Defendant. | * | |

**PLAINTIFF'S TRIAL BRIEF REGARDING THE ADMISSIBILITY OF
SUBSEQUENT DESIGNS IN PRODUCT LIABILITY CASES**

On November 13, *2012* Veronica Fox was paralyzed when her *2004*
Cadillac SRX with 'ultraview' roof was in a rollover wreck. Her wreck, and the
resultant roof crush, was nearly identical to a wreck of the exact same car that
occurred on December 16, *2004* at GM's own proving grounds, when the car was
being driven by a GM engineer. In both rollover wrecks, the 'ultraview' roof came
completely off and the remaining structure crushed into the occupant compartment.
In the next several months, *during 2005,* GM totally abandoned the glued-on glass-
and-plastic roof design of the 2004 SRX with 'ultraview' roof and began designing
the next generation SRX, which became the 2010 model. Starting in 2005, GM
decided to not only ditch the 2004 model year 'ultraview' roof design, but to also
more than double the roof strength. Starting in 2005, GM abandoned the glue

altogether, and decided that would have the roof bolted to the metal frame.

GM's total abandonment of the design it attempts to defend in this trial, and GM's massive reinforcement of the roof is plainly admissible. Those decisions came right after that December 16, 2004 wreck at GM's own proving grounds. GM's lawyers and professional testifiers will attempt at trial to protest the 2004 SRX 'ultraview' roof was absolutely safe; GM's own conduct proves that GM itself reached the opposite conclusion. *That is why GM will not call to testify any engineer employed by GM.*

Plaintiff may contest the protestations of GM's lawyers and professional testifiers. Plaintiff may do so by presenting the facts of GM's own conduct to the jury, through Plaintiff's own experts and through cross-examination of GM's expert witnesses.

What GM itself did is evidence of defect, evidence that GM was on notice of the defect (GM's internal reaction to the proving ground wrecks was to change the design – immediately), evidence of the feasibility of alternative designs, and impeachment evidence – to refute the protestations of GM's expert testifiers. *See* FED. R. EVID 407 ("[T]the court may admit [evidence of subsequent remedial measures] for ***another purpose***, such as impeachment or—if disputed—[to prove] the feasibility of precautionary measures") (emphasis added); *see also Wood v. Morbark Indus., Inc.*, 70 F.3d 1201 (11th Cir. 1995) (reversible error to preclude

cross-examination on design change after defendant denied changes were made, then argued the original design was the "safest"); *see also Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 584 (5th Cir. 1985) (no abuse of discretion to allow evidence of design changes that occurred years after original manufacturing design because "the feasibility of alternative designs may almost always be in question in design defect cases"); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978), *reh'g denied* 578 F.2d 871 (5th Cir. 1978) (evidence of subsequent remedial measure would be admissible to prove "knowledge of the dangerous condition").[1]

Evidence that GM abandoned the subject roof design and replaced it with an indisputably far safer roof design is absolutely admissible, for many reasons, including those stated above.

Respectfully submitted this 6th day of March, 2019.

BUTLER WOOTEN & PEAK LLP


 s/  *James E. Butler, Jr.*
JAMES E. BUTLER, JR.
 Georgia Bar No. 099625
 jim@butlerwooten.com
TEDRA L. CANNELLA
 Georgia Bar No. 881085
 tedra@butlerwooten.com
ROBERT H. SNYDER
 Georgia Bar No. 404522

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

rob@butlerwooten.com
RORY A. WEEKS
  Georgia Bar No. 113491
  rory@butlerwooten.com
2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700
(404) 321-1713 Fax

KENNETH S. NUGENT
WILLIAM G. HAMMILL
  Georgia Bar No. 943334
  whammill@attorneykennugent.com
4227 Pleasant Hill Road
Building 11, Suite 300
Duluth, GA 30096
(404) 885-1983

**ATTORNEYS FOR PLAINTIFF**

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| VERONICA ALAINE FOX, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION FILE |
| | * | |
| v. | * | NO. 1:17-CV-00209-MHC |
| | * | |
| GENERAL MOTORS LLC, | * | |
| | * | |
| Defendant. | * | |

**PLAINTIFF'S TRIAL BRIEF: ORDER OF PROOF & 'CONNECTING UP'**

Trial courts have broad discretion in regulating the order of presenting evidence at trial. *See, e.g.*, *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1181 (11th Cir. 2002). That discretion includes admitting evidence subject to it being "connected up" with later evidence. *See* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence ***on the condition that the proof be introduced later***.") (emphasis added); *see also United States v. Cheatham*, No. 206-CV-0210-MEF, 2008 WL 276332, at *4 (M.D. Ala. Jan. 30, 2008) ("if the district court 'determines it is not reasonably practical to require a showing to be made before admitting the evidence, [it] may admit the statement subject to being connected up'" through

later introduced evidence), quoting *United States v. James*, 590 F.2d 575, 582 (5th Cir. 1979), *overruled on other grounds*.

Conditionally admitting evidence makes perfect sense—as "an entire case cannot be put in simultaneously but must proceed in sequence . . . ." *United States v. Ziegler*, 583 F.2d 77, 80 (2d Cir. 1978).  If evidence is admitted on the condition that it should be connected up, the objecting party must renew its objections to the evidence after the opposing party has closed.  *See* Fed. R. Evid. 103(a) (objections must be renewed after any non-definitive rulings at or before trial).

Respectfully submitted this 6th day of March, 2019.

Respectfully submitted,

BUTLER WOOTEN & PEAK LLP


BY: /s/ James E. Butler, Jr.
    JAMES E. BUTLER, JR.
      Georgia Bar No. 099625
      jim@butlerwooten.com
    TEDRA L. CANNELLA
      Georgia Bar No. 881085
      tedra@butlerwooten.com
    ROBERT H. SNYDER
      Georgia Bar No. 404522
      rob@butlerwooten.com
    RORY A. WEEKS
      Georgia Bar No. 113491
      rory@butlerwooten.com
    2719 Buford Highway
    Atlanta, Georgia 30324
    (404) 321-1700
    (404) 321-1713 Fax

KENNETH S. NUGENT
WILLIAM G. HAMMILL
 Georgia Bar No. 943334
 whammill@attorneykennugent.com
 4227 Pleasant Hill Road
 Building 11, Suite 300
 Duluth, GA 30096
 (404) 885-1983

**ATTORNEYS FOR PLAINTIFFS**

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| VERONICA ALAINE FOX, | * | |
| | * | |
| Plaintiff | * | CIVIL ACTION FILE |
| | * | |
| v. | * | NO. 1:17-CV-00209-MHC |
| | * | |
| GENERAL MOTORS LLC, | * | |
| | * | |
| Defendant | * | |

**PLAINTIFF'S TRIAL BRIEF REGARDING
A PRELIMINARY CROSS-EXAMINATION OF THE
DEFENDANT'S EXPERTS ABOUT THEIR QUALIFICATIONS
BEFORE THOSE WITNESSES ARE ALLOWED TO GIVE
<u>EXPERT TESTIMONY ON DIRECT EXAMINATION</u>**

Because defendant GM intends to attempt to have several of its 'experts' offer 'expert' opinions for which they are not qualified, Plaintiff files this trial brief requesting the Court exercise its broad discretion to permit her to conduct a preliminary cross-examination of one or more of the Defendant's experts about their qualifications ***before*** those witnesses are allowed to give expert testimony on direct examination.

It is well established that one of the foundational requirements for "expert" testimony is that the witness be "qualified as an expert by knowledge, skill, experience, training, or education."  FED. R. CIV. P. 702.  The witness's qualifications must be proven ***before*** offering an expert opinion.  *See, e.g., Hughes*

*v. Kia Motors Corp.*, 766 F.3d 1317, 1329 (11th Cir. 2014) ("This court has set out

three requirements that an expert must meet ***before*** his opinions may be admitted.

First, the expert must be qualified *on the matter about which he intends to*

*testify*.")(emphasis added). "The qualifications required of an expert witness before

he may give an opinion is a matter committed to the broad discretion of the trial

judge." *Barnes v. Gen. Motors Corp.*, 547 F.2d 275, 278 (5th Cir. 1977).[1]

It is within the Court's broad discretion to permit *voir dire* of GM's experts

by Plaintiff before those experts are permitted to testify about opinions.  Many

courts have done so.  *See United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir.

2000) (finding voir dire of expert witness in presence of jury permissible under

*Daubert*); *Cecero v. Allstate Ins. Co.*, No. CIV.A.06-286, 2007 WL 4616907, at *9

(E.D. Pa. Dec. 3, 2007), vacated on other grounds, 303 F. App'x 111 (3d Cir. 2008)

(finding it is not an abuse of discretion "to permit counsel to establish [an expert's]

qualifications through additional voir dire."); *United States v. Napoli*, No. CIV.A.

11-6353, 2012 WL 4459584, at *8 (E.D. Pa. Sept. 26, 2012) (finding no error

where voir dire occurred in presence of jury); *Payton v. Daimlerchrysler Corp.*,

No. 4:00CV00598 GH, 2002 WL 34701147, at *1 (E.D. Ark. Jan. 15, 2002)

(permitting defendant "to qualify [the witness] as an expert and the basis for his

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc),
the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth
Circuit handed down before October 1, 1981.

2

opinion at trial though voir dire of counsel before a proper determination can be made applying Daubert").

## CONCLUSION

Plaintiff requests that the Court exercise its broad discretion to permit Plaintiff to conduct a preliminary cross-examination of a Defendant's expert witness about her or his qualifications *before* the witness is permitted to give expert testimony on direct examination.  Plaintiff respectfully requests that Defendants be required to formally tender each such witness as an expert—before eliciting expert testimony on direct examination—so that Plaintiff may test each expert's qualifications before the Court makes a final determination about the scope it of testimony it will permit from them.

Respectfully submitted this 6th day of March, 2019.

BUTLER WOOTEN & PEAK LLP


 s/ *James E. Butler, Jr.*
JAMES E. BUTLER, JR.
 Georgia Bar No. 099625
 jim@butlerwooten.com
TEDRA L. CANNELLA
 Georgia Bar No. 881085
 tedra@butlerwooten.com
ROBERT H. SNYDER
 Georgia Bar No. 404522
 rob@butlerwooten.com
RORY A. WEEKS
 Georgia Bar No. 113491
 rory@butlerwooten.com

3

2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700
(404) 321-1713 Fax

KENNETH S. NUGENT
WILLIAM G. HAMMILL
  Georgia Bar No. 943334
  whammill@attorneykennugent.com
4227 Pleasant Hill Road
Building 11, Suite 300
Duluth, GA 30096
(404) 885-1983

**ATTORNEYS FOR PLAINTIFF**

4

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

VERONICA ALAINE FOX,     \*

                               \*

     Plaintiff,         \*    CIVIL ACTION FILE

                               \*

v.                       \*    NO. 1:17-CV-00209-MHC

                               \*

GENERAL MOTORS LLC,     \*

                               \*

     Defendant.       \*

**PLAINTIFF'S TRIAL BRIEF: GM'S OWN
<u>DOCUMENTS ARE ADMISSIBLE AGAINST GM</u>**

A defendant corporation's own documents are admissible against it.

In order to be admissible, a document must be relevant, authentic, and not

subject to a valid hearsay objection.  GM's own documents are admissible.

**1.  Relevance**

Relevant evidence is admissible.  Fed. R. Evid. 401.  "Evidence is relevant

if: (a) it has any tendency to make a fact more or less probable than it would be

without the evidence; and (b) the fact is of consequence in determining the action."

*Id.*  The documents Plaintiff used to examine GM employees and experts as

adverse witnesses are clearly relevant: they tend to prove Plaintiff's allegations of

defect and guilty knowledge, while directly contradicting the various 'arguments'

GM has made to this Court and intends to present to the jury (e.g., "roof crush

don't matter"/"diving").  That is why GM so desperately attempts to prohibit its

employees from being examined with GM's own documents.  Additionally, a

witness need not be familiar with a document in order to be questioned about it.[1]

## 2.  Authenticity

Documents may be authenticated by a wide range of circumstantial

evidence.  *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985).

Documents may be authenticated by, *inter alia*, their "*appearance, contents,*

*substance, internal patterns, or other distinctive characteristics of the item, taken*

*together with all the circumstances*."  Fed. R. Evid. 901(b)(4) (emphasis added).

In other words, if a document *appears to be* authentic from its contents, substance,

characteristics, or circumstances, then the authenticity rule has been met.  The

authenticity of all the GM documents about which GM may complain in this trial

easily meets this standard.  What's more, as best Plaintiff's counsel can recall, no

---

[1] *See, e.g.*, *Aden v. Life Care Centers of Am., Inc.*, No. CIV.A. 05-2286-CM, 2008 WL 2795133, at *5 (D. Kan. July 18, 2008) (The Court allowed defendant's corporate representative to testify about plaintiff's tax return, of which she had no personal knowledge, noting, "Although Rule 602 provides that a witness's testimony must be based on personal knowledge, it 'does not require that the witness' knowledge be positive or rise to the level of absolute certainty. Evidence is inadmissible . . . only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to.'" (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)).

GM witness has disputed the authenticity of a single GM document used as an exhibit in the trial depositions Plaintiff took of GM engineers.

"A district court has discretion to determine authenticity, and that determination should not be disturbed on appeal absent a showing that there is no competent evidence in the record to support it." *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000).

The Federal Rules of Evidence require only *prima facie* evidence that the evidence is authentic, and such evidence can be circumstantial evidence gleaned from the document's contents and appearance. *See United States v. Block*, 148 F.App'x 904, 910 (11th Cir. 2005) ("[A]uthentication or identification under rule 901 merely involves the process of presenting sufficient evidence to make out a *prima facie* case that the proffered evidence is what it purports to be. . . . Use of circumstantial evidence alone to authenticate a document does not constitute error.").

Circumstantial evidence regarding a document's "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . taken in conjunction with circumstances" can come in many forms. *See* Fed. R. Evid. 901(b)(4). For instance, an email is adequately authenticated where it appears authentic and circumstantial evidence tends to show that the information it contains relates to the defendant, even if neither the defendant nor the third-party email

system host testifies.  *Siddiqui*, 235 F.3d at 1322.  Additionally, "courts have often held that the circumstances of producing a document to an opposing party is sufficient to meet the minimal standards required for the opposing party to authenticate the document."  *Thornton v. El-Amin*, 1:10-CV-474-WSD, 2012 WL 529998, at *15 n.14 (N.D. Ga. Feb. 17, 2012); *see also Gerstenfield v. Zale Delaware, Inc.*, No. 6:05CV1719 0RL 18DAB, 2006 WL 2375055, at *2 (M.D. Fla. Aug. 16, 2006) ("[A] document is authenticated when produced by a defendant in discovery.").

GM's documents clearly meet the touchstones of Rule 901(b)(4).  Many of the documents display GM's trademark; most contain information about GM's products and processes; many are marked with GM's Bates numbers and the language "produced by GM;" many have GM's claim of confidentiality and are marked "subject to protective order"; many reflect the actions of GM committees; and some are signed by GM employees.  In addition, the contents of the documents themselves serve to substantiate their authenticity—they address internal GM manufacturing decisions, investigations, parts, findings, tests, and conclusions.  In sum, the documents at issue easily meet the bar for authenticity.

### 3. Not "hearsay"

GM may object that some testimony is "hearsay" – *even though the testimony is based on GM's own documents.*  That objection is baseless:  GM's

internal documents constitute admissions by a party opponent.  *See* Fed. R. Evid.

801(d)(2).[2]

> An admission by a party-opponent is *not* hearsay if it was:
>
>> (A) The party's own statement, in either an individual or
>> representative capacity;
>> (B) A statement of which the party has manifested an adoption or
>> belief in its truth;
>> (C) A statement by a person authorized by the party to make a
>> statement concerning the subject; [or]
>> (D) A statement by the party's agent or employee, but not
>> including any agent of the state in a criminal proceeding,
>> concerning a matter within the scope of the agency or employment,
>> made during the existence of the relationship[.]

Fed. R. Evid. 801(d)(2)(A)–(D).

The GM documents Plaintiff have and will use during their trial depositions,

and will use at trial, readily satisfy one or all of these categories of admissions by a

party opponent.  *First,* all the documents at issue contain statements of GM

employees or agents discussing matters within the scope of their duties.  *Second*,

many of the documents are identified on their face with GM logos and committee

---

[2] "All that is required is that the agent or employee made the statements during and
within the scope of the agency or employee relationship."  Charles A. Wright, et
al., Federal Practice and Procedure § 6776 (2018 ed.); *see also* Fed. R. Evid.
801(d)(2) Advisory Committee's note ("No guarantee of trustworthiness is
required in the case of an admission.  The freedom which admissions have enjoyed
from technical demands of searching for an assurance of truthworthiness in some
against-interest circumstance, and from the restrictive influences of the opinion
rule and the rule requiring firsthand knowledge, when taken with the apparently
prevalent satisfaction with the results, calls for generous treatment of this avenue to
admissibility.").

or department names.  These documents are admissions by GM under Rule 801(d)(2) and are not hearsay.

Further, many GM documents will be offered for other non-hearsay purposes such as showing notice of defect, intent, state of mind, impeachment,  or another non-hearsay use.  The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  GM documents offered to prove anything other than the truth of their contents simply are *not* hearsay and are properly used to examine GM executives and engineers.  *Id.*

Respectfully submitted this 6th day of March, 2019.

Respectfully submitted,

BY:  */s/ James E. Butler, Jr.*
JAMES E. BUTLER, JR.
  Georgia Bar No. 099625
  jim@butlerwooten.com
TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@butlerwooten.com
ROBERT H. SNYDER
  Georgia Bar No. 404522
  rob@butlerwooten.com
RORY A. WEEKS
  Georgia Bar No. 113491
  rory@butlerwooten.com
2719 Buford Highway
Atlanta, Georgia 30324

(404) 321-1700
(404) 321-1713 Fax


KENNETH S. NUGENT
WILLIAM G. HAMMILL
  Georgia Bar No. 943334
  whammill@attorneykennugent.com
  4227 Pleasant Hill Road
  Building 11, Suite 300
  Duluth, GA 30096
(404) 885-1983

**ATTORNEYS FOR PLAINTIFF**